**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

C.H., a minor, by and through his mother,
NICOLETTE HESLIN, custodial parent
and next friend,

     Plaintiffs,                            Case No.:

v.

HORIZION GROUP USA, INC. and
WALMART, INC,

     Defendants.

_____/

## **COMPLAINT**

Plaintiffs, C.H.. a minor, by and through his mother, **NICOLETTE HESLIN**, custodial parent and next friend, (hereafter referred to as "Plaintiffs"), by and through their undersigned counsel, **JOHNSON BECKER, PLLC** hereby submit the following Complaint and Demand for Jury Trial against Defendant **HORIZION GROUP USA, INC.** and **WALMART, INC.,** ("Walmart" ) (collectively referred to as "Defendants"), and allege the following upon personal knowledge and belief, and investigation of counsel:

### **NATURE OF THE CASE**

1.    This is a products liability action seeking recovery for substantial personal injuries sustained by minor Plaintiff, C.H., and his mother, Nicolette Heslin, after Plaintiff ingested "SQUOOSH-OS Water Beads," Item No.: 88860E (hereafter generally referred to as "water beads" or "subject water beads").

2.    The subject water beads are designed, manufactured, distributed and sold by Horizon, and was purchased at the Walmart store located at 1590 Dunlawton Ave, Port Orange, FL 32127.

3.    *__For years,__* the United States Consumer Products Safety Commission ("CPSC") has warned

against the deadly hazards associated with waters; cautioning sellers, distributors, and the public at large of the dangers associated with the ingestion of these products.[1]

4.      According to the CPSC, from 2016-2022, "there were an estimated 7,800 Emergency Room (ER) visits associated with water beads and [the] CPSC is aware of at least one death." [2]

5.      On or about December 1, 2023, N.H. was brought to urgent care for what appeared to be a bubble obstructing his right nostril. At that time, it was determined to be a "nasal polyp." However, after half a year of sleepless nights and agonizing pain, a excision and biopsy of C.H.'s right nasal determined that the "mass" was a water bead manufactured, designed, distributed and sold by Defendants.

6.      With the wealth of information available to them through the CPSC, Health Canada and other medical literature, Defendants knew or should have known of these defects with their water beads, but has nevertheless put profit ahead of safety by continuing to sell the water beads to consumers; failing to warn said consumers of the serious risks posed by the defects; and failing to issue a recall related to these defects regardless of the risk of significant injuries.

7.      As a direct and proximate result of the Defendants' collective conduct, the Plaintiffs in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

### PLAINTIFFS C.H. & NICOLETTE HESLIN

8.      C.H. is a minor who resides and is domiciled with his natural mother and guardian, Nicolette Heslin, in the City of Edgewater, County of Volusia, State of Florida.  Plaintiffs are

---

[1] US Consumer Product Safety Commission. Water beads. https://www.cpsc.gov/Safety-Education/Safety-Education-Centers/Water-Beads-Information-Center
[2] *Id.*

therefore residents and citizens of the State of Florida for purposes of diversity pursuant to 28 U.S.C. § 1332.

9.    On or about December 1, 2023, Plaintiff C.H. suffered serious and substantia injuries as the direct and proximate result of the ingestion of the subject water bead into his right nasal passage

## DEFENDANTS HORIZON GROUP USA, INC. & WALMART, INC.

10.    Defendant Horizon Group USA, Inc., is a New Jersey corporation with its principal place of business located at 45 Technology Drive, Warren, New Jersey 07059. Horizon is therefore a resident and citizen of the State of Florida for purposes of diversity pursuant to 28 U.S.C. § 1332.

11.    Defendant Walmart, Inc., is a Delaware corporation with its principal place of business located at 45 Technology Drive, Warren, New Jersey 07059. Horizon is therefore a resident and citizen of the State of Florida for purposes of diversity pursuant to 28 U.S.C. § 1332.

12.    Horizon designed, manufactured and/or distributed the defective product for sale by Walmart in the state of Florida.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

15.    Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because both Defendants have sufficient minimum contacts with the State of Florida and intentionally availed themselves of the markets within Florida through the promotion, sale, marketing, and distribution of their products.

3

## FACTUAL BACKGROUND

16.     Water beads are made from superabsorbent polymers and are widely marketed as child sensory toys, gel projectiles for toy guns, decorations, and florist products.[3] They are commonly sold in quantities of tens of thousands per package in dehydrated form.

17.     Dehydrated beads can be easily dropped and scatter in the home and subsequently be ingested when discovered by young children; and can swell hundreds of times their original size when exposed to fluids.[4]

18.     Hydrated beads, because of their size, shape, and bright colors, may be mistaken for candy by children. Once ingested, expanding water beads can result in intestinal obstruction and other complications, which may lead to surgical procedures, severe long-term morbidity, and death.[5]

19.      In addition to harms associated with ingestion, water bead-related injuries can result from insertion in the ear or nose; just as it did it this case.[6]

20.     ***For years,*** the United States Consumer Products Safety Commission ("CPSC") has warned against the deadly hazards associated with waters; cautioning sellers, distributors, and the public at large of the dangers associated with the ingestion of these products.[7]

21.     According to the CPSC, from 2016-2022, "there were an estimated 7,800 Emergency

---

[3]  K. Johnson-Arbor. Are Water Beads Toxic? National Capital Poison Center (2024) https://www.poison.org/articles/are-water-beads-toxic

[4] Government of Canada. Water beads may pose life-threatening risks to young children Public Advisory (May 4, 2023) https://recalls-rappels.canada.ca/en/alert-recall/water-beads-may-pose-life-threatening-risks-young-children

[5]  US Consumer Product Safety Commission. Water beads. https://www.cpsc.gov/Safety-Education/Safety-Education-Centers/Water-Beads-Information-Center

[6]  H.G. Zalzal, M. Ryan, B. Reilly, P. Mudd Managing the destructive foreign body: water beads in the ear (a case series) and literature review Ann Otol Rhinol Laryngol, 132 (9) (2023), pp. 1090-1095.

[7]  US Consumer Product Safety Commission. Water beads. https://www.cpsc.gov/Safety-Education/Safety-Education-Centers/Water-Beads-Information-Center

Room (ER) visits associated with water beads and [the] CPSC is aware of at least one death." [8]

22.    On or about December 1, 2023, N.H. was brought to urgent care for what appeared to be a bubble obstructing his right nostril. At that time, it was determined to be a "nasal polyp." However, after half a year of sleepless nights and agonizing pain, an excision and biopsy of C.H.'s right nasal revealed that the "mass" was a water bead manufactured, designed, distributed and sold by Defendants.

23.    With the wealth of information available to them through the CPSC and other sources, Defendants knew or should have known of these defects with their water beads, but have nevertheless put profit ahead of safety by continuing to sell the water beads to consumers; failing to warn said consumers of the serious risks posed by the defects; and failing to issue a recall related to these defects regardless of the risk of significant injuries.

24.    Based upon that same wealth of information, it was reasonable, foreseeable and expected that a child such as C.H. would ingest the subject water beads

25.    Further, the water beads packaging and instructions lacked adequate warnings about the risks associated with ingestion; particularly as a product market for children as "6+":



 Sold at Walmart

---

[8] *Id.*

26. Horizon designed and distributed the water beads with knowledge that it would be sold to children, including through Walmart's stores, without addressing the hazards associated with ingestion.

27. Similarly, the defective design of the product directly contributed to the incident and Plaintiff C.H.'s injuries due to the propensity for the water beads to become ingested and injury children such as C.H.

28. Reasonable, cost-effective alternative designs exist the would prevent the ingestion of the subject water beads by children, including C.H.

29. Defendant knew or should have known that its pressure cookers possessed defects that pose a serious safety risk to Plaintiffs and the public.  Nevertheless, Defendant continues to ignore and/or conceal their knowledge of the pressure cookers' defects from the general public and continues to generate a substantial profit from the sale of its pressure cookers, demonstrating a callous, reckless, willful, and depraved indifference to the health, safety, and welfare of Plaintiffs.

30. Consequently, the Plaintiffs in this case seek damages resulting from the use of Defendant's pressure cooker as described above, which has caused the Plaintiffs to suffer from serious bodily injuries, medical expenses, lost wages, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY – DESIGN DEFECT

31. Defendants are the manufacturers, designers, sellers, distributors, marketers, and suppliers of the subject water beads which were negligently and defectively designed due to their propensity to be ingested by children such as C.H.

32. Defendants failed to exercise reasonable care in designing, marketing and distributing their water beads which were defective and presented an unreasonable risk of harm to consumers due to their propensity to be ingested by children such as C.H.

33. As a result, the subject water beads contain defects in their design which render them unreasonably dangerous to consumers, such as the C.H. when used as reasonably foreseeable to Defendants.

34. C.H. ingested the subject water beads, which was reasonably foreseeable manner to Defendants.

35. The water beads were not materially altered or modified after being manufactured and before being used by Plaintiff.

36. Plaintiff Nicolette Heslin purchased the subject water beads from the Walmart store located at 1590 Dunlawton Ave, Port Orange, FL 32127.

37. On or about December 1, 2023, N.H. was brought to urgent care for what appeared to be a bubble obstructing his right nostril. At that time, it was determined to be a "nasal polyp." However, after half a year of sleepless nights and agonizing pain, an excision and biopsy of C.H.'s right nasal revealed that the "mass" was a water bead manufactured, designed, distributed and sold by Defendants.

38. The water beads did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

39. Further, a reasonable person would conclude that the possibility and risk of serious harm outweigh the burden or cost of making the chain saws safe. Specifically:

   a. Defendants failed to properly design and sell the water beads, despite having extensive knowledge that the aforementioned injuries could and did occur;

   b. Defendant failed to adequately test the water beads; and

7

c. Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiffs' injuries and damages.

40. As a direct and proximate result of Defendants negligent design of their water beads, the Plaintiffs in this case suffered injuries and damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for damages, as well as punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper.

## COUNT II
## STRICT LIABILITY – FAILURE TO WARN

41. Defendants are the designers, sellers, distributors, marketers, and suppliers of the subject water beads, which lacked sufficient and adequate warnings related to the dangers of ingestion.

42. Specifically, the water beads packaging and instructions lacked adequate warnings about the risks associated with ingestion; particularly as a product market for children as "6+":

43. Horizon designed and distributed the water beads with knowledge that it would be sold to children, including through Walmart's stores, without addressing the hazards associated with ingestion.

44. Plaintiff Nicolette Heslin purchased the subject water beads from the Walmart store located at 1590 Dunlawton Ave, Port Orange, FL 32127.

45. Had she known of the risks associated with Defendants' water beads, she would have taken steps to avoid injury to C.H. by not purchasing the water beads.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, as well as punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper.

## COUNT III
## NEGLIGENCE/NEGLIGENT DESIGN DEFECT

46.     Defendants have a duty of reasonable care to design, market and sell non-defective products, including the subject water beads, that create unreasonable risk to consumers – especially children – such as C.H.

47.     Defendants failed to exercise ordinary care in the design of their water beads in that Defendants knew or should have known that said water beads created a high risk of unreasonable harm to the Plaintiff and consumers alike due to their propensity to be ingested by children, such as Plaintiff.

48.     Defendants were negligent in the design of their water beads that, among other things, it designed the subject chainsaw so that there was an unreasonably high and foreseeable likelihood that a child could ingest them due to their size, shape and color.

49.     As a direct and proximate result of Defendant's negligence, the Plaintiffs in this case suffered injuries and damages.

        **WHEREFORE**, Plaintiff demands judgment against Defendants for damages, as well as punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper.

## COUNT IV
## NEGLIGENCE/NEGLIGENT INFORMATION DEFECT

50.     Defendants have a duty of reasonable care to market and sell non-defective products, including the subject water beads, that create unreasonable risk to consumers – especially children – such as C.H.

51.     Defendant failed to exercise ordinary care warnings, information and instruction of the water beads in that packaging and instructions lacked adequate warnings about the risks associated with ingestion; particularly as a product marketed for children as "6+".

9

52.     Horizon designed and distributed the water beads with knowledge that it would be sold to children, including through Walmart's stores, without addressing the hazards associated with ingestion.

53.     Plaintiff Nicolette Heslin purchased the subject water beads from the Walmart store located at 1590 Dunlawton Ave, Port Orange, FL 32127.

54.     Had she known of the risks associated with Defendants' water beads, she would have taken steps to avoid injury to C.H. by not purchasing the water beads.

55.     As a direct and proximate result of Defendant's negligence, the Plaintiff in this case suffered injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, and all such other relief as the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands that all issues of fact of this case be tried to a properly impaneled jury to the extent permitted under the law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendants for damages, including punitive damages if applicable, to which they are entitled by law, as well as all costs of this action and interest, to the full extent of the law, whether arising under the common law and/or statutory law, including:

      a.  judgment for Plaintiffs and against Defendants;

      b.  damages to compensate Plaintiffs for their injuries, economic losses and pain and suffering sustained as a result of the use of the Defendant's water beads;

      c.  pre and post judgment interest at the lawful rate;

d.  An order allowing Plaintiffs leave to amend their complaint to include a claim for punitive damages, according to proof;

e.  a trial by jury on all issues of the case; and

f.  for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully Submitted,

Dated: November 14, 2025

**JOHNSON BECKER, PLLC**

*/s/ Lisa A. Gorshe, Esq.*
Lisa A. Gorshe, Esq. (FL #122180)

444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800 / (612) 436-1801 (f)
lgorshe@johnsonbecker.com

***Attorneys for Plaintiffs***

11